UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITIZENS INSURANCE COMPANY OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 7764 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| UNCOMMON, LLC; SG VENTURES, LLC; JOHN | ) | |
| HONG d/b/a SG VENTURES, LLC; and S.G. | ) | |
| VENTURES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Citizens Insurance Company of America filed this diversity action against three entities

and an individual, referred to here collectively as "Uncommon," seeking a declaration that it has

no duty to defend or indemnify Uncommon against counterclaims brought by UncommonGoods,

LLC, in *Uncommon, LLC v. UncommonGoods, LLC*, No. 10 C 4818 (N.D. Ill.). Uncommon

counterclaimed, seeking a declaration that two insurance policies issued by Citizens obligated it

to defend and indemnify Uncommon, damages for breach of contract, and statutory remedies

under 215 ILCS 5/155 for Citizens' alleged bad faith refusal to provide a defense. Uncommon

moved for summary judgment, and Citizens moved for judgment on the pleadings. Citizens'

motion is granted and Uncommon's motion is denied.

**Background**

Uncommon operates a website, www.getuncommon.com, through which it sells high-

end, customizable design cases for cellular phones. In the underlying lawsuit, Uncommon

sought a declaration that it did not infringe UncommonGoods' trademarks; that it had not

engaged in unfair competition, false designation of origin, or unfair competition; and that there

-1-

was no likelihood of confusion between Uncommon's products and those of UncommonGoods. Doc. 24-3 at 2-14.  Uncommon filed that suit after receiving letters and notices from UncommonGoods charging that Uncommon's use of the name "Uncommon" infringed UncommonGoods' trademarks.  *Id*. at 10-11.  UncommonGoods answered and filed counterclaims against Uncommon alleging: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (2) common law trademark infringement; (3) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (4) common law unfair competition; (5) deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.; (6) tortious interference with business practices; (7) fraud on the Patent and Trademark Office ("PTO"); and (8) unjust enrichment.  *Id*. at 17-34.  The claims and counterclaims in the underlying action have been settled and dismissed with prejudice.  *See Uncommon, LLC v. UncommonGoods, LLC*, No. 10 C 4818, Stipulated Order of Dismissal (N.D. Ill. Aug. 30, 2011).

The factual allegations upon which UncommonGoods' counterclaims rested may be summarized as follows.  UncommonGoods operates a website, www.uncommongoods.com, and publishes a catalog offering a variety of merchandise, including "furniture and furniture-related goods, jewelry, apparel and apparel accessories, carrying cases and bags designed for storage and transportation of consumer electronics, cellular phone cases, media players, and laptop computers."  *Id*. at 19 (¶ 14).  UncommonGoods owns valid U.S. trademarks for "UNCOMMONGIFTS," "UNCOMMON GIFTS," "UNCOMMON GOODS," and "UNCOMMONGOODS" for use in the online, mail-order, and gift store markets.  *Id*. at 19-20 (¶¶ 15-19).  The counterclaims alleged that Uncommon's "use of the UNCOMMON trademark suggests association, affiliation, or sponsorship with [UncommonGoods] and is without the authorization, approval, and permission of [UncommonGoods], so as to cause, or be likely to

cause, confusion or mistake, or to deceive consumers as to the origin of [Uncommon's] goods and/or services." *Id*. at 26 (¶ 48). Uncommon's unauthorized use of the UNCOMMON trademarks, the counterclaims added, interferes with UncommonGoods' "reasonable expectation of a future business relationship with its customers and future customers … [and its] reasonable expectation of exclusive use of its UNCOMMON trademarks," and has resulted in Uncommon "unjustly retain[ing] the benefit of [UncommonGoods'] trademarks and services." *Id*. at 27, 31 (¶¶ 55–56, 73).

Uncommon holds two insurance policies issued by Citizens, which are materially identical and thus for ease of reference will be treated as one. The policy provides Uncommon with coverage for "bodily injury," "property damage," and "personal and advertising injury." Doc. 24-8 at 14-23. Coverage for "personal and advertising injury" is subject to the following exclusion, referred to here as the "IP exclusion":

> This insurance does not apply to:
>
> a. "Personal and advertising injury":
>
> * * *
>
> **(9) Infringement of Copyright, Patent, Trademark or Trade Secret**
>
> Arising out the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".
>
> However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress, or slogan.

*Id*. at 19.

Upon filing the underlying lawsuit against UncommonGoods, Uncommon notified

Citizens, and Citizens denied coverage. Doc. 26-1. After UncommonGoods counterclaimed in

the underlying action, Uncommon again notified Citizens, and Citizens again denied coverage.

Doc. 26-2. Citizens commenced this coverage litigation two months later, after an exchange of

correspondence between the parties' attorneys. Docs. 26-3, 26-4.

**Discussion**

The parties agree that Illinois law governs the policies. The Seventh Circuit recently

summarized Illinois law as it pertains to the interpretation of insurance policies:

> In Illinois, insurance policies are contracts; the general rules governing the
> interpretation and construction of contracts govern the interpretation and
> construction of insurance policies. Illinois courts aim to ascertain and give
> effect to the intention of the parties, as expressed in the policy language, so
> long as doing so does not contravene public policy. In doing so, they read
> the policy as a whole and consider the type of insurance purchased, the risks
> involved, and the overall purpose of the contract. If the policy language is
> unambiguous, courts apply it as written. Policy terms that limit an insurer's
> liability are liberally construed in favor of coverage, but only when they are
> ambiguous, or susceptible to more than one reasonable interpretation.

*Clarendon Nat'l Inc. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011) (citations omitted).

Although ambiguities are construed in the insured's favor, "a court will not search for ambiguity

where there is none." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill.

2006); *see also Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 732 (7th Cir.

2006).

"To determine whether an insurer has a duty to defend its insured, [the court] compare[s]

the factual allegations of the underlying complaint (or in this case, counterclaim) to the language

of the insurance policy. If the facts alleged in the underlying complaint fall within, or potentially

within, the policy's coverage, the insurer's duty to defend arises." *Amerisure Mut. Ins. Co. v.*

*Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010) (citations and internal quotation marks omitted). An insurer may decline to defend a lawsuit only where "it is clear from the face of the underlying complaint that the allegations set forth … fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Valley Forge*, 860 N.E.2d at 315; *see also Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688 (7th Cir. 2008). That is, "an insurer has no duty to defend unless the underlying claim contains explicit factual allegations that potentially fall within policy coverage." *Amerisure*, 622 F.3d at 810. "Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured, and any doubts and ambiguities are resolved against the insurer." *Ibid.* (internal quotation marks omitted). "Insurers have the burden of proving that an exclusion applies. Insureds, in turn, have the burden to prove that an exception to an exclusion restores coverage." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010). The insurer has a duty to defend "even if only one of several theories of recovery alleged in the complaint falls within the potential coverage," and even if some or all of the allegations in the underlying complaint are "groundless, false, or fraudulent." *Valley Forge*, 860 N.E.2d at 315.

The parties agree that UncommonGoods' counterclaims in the underlying suit did not implicate coverage for "bodily injury" or "property damage." Doc. 35 at 5; Doc. 43 at 1-2; Doc. 47. They further agree that UncommonGoods' trademark infringement and fraud on the PTO counterclaims, standing alone, did not prompt Citizens' duty to defend. Doc. 35 at 5 & n.1; Doc. 43 at 1; Doc. 47. The parties' disagreement concerns whether UncommonGoods' unfair competition, deceptive trade practices, tortious interference with business practices, and unjust enrichment counterclaims alleged "personal and advertising injury" and, if so, whether the IP exclusion precludes coverage. There is no need to decide whether those counterclaims alleged

"personal and advertising injury" within the meaning of the policy because, even if they did, the

IP exclusion unambiguously precludes coverage and thus relieved Citizens of any duty to defend

(and thus to indemnify) Uncommon in the underlying litigation.

As noted above, the IP exclusion precludes coverage for claims "[a]rising out of the

infringement of copyright, patent, trademark, trade secret or other intellectual property rights."

Citizens maintains that the exclusion bars coverage for UncommonGoods' counterclaims

because each depends on the allegation that Uncommon infringed UncommonGoods'

trademarks. Uncommon responds that the exclusion does not bar coverage for the unfair

competition, deceptive trade practices, tortious interference, and unjust enrichment

counterclaims because each can proceed without an allegation of trademark infringement. The

proper resolution of this dispute turns on three questions.

The first question is whether the IP exclusion can be avoided by the mere fact that unfair

competition, deceptive trade practices, tortious interference, and unjust enrichment claims, as a

general matter, can and usually do arise from conduct having nothing to do with trademark

infringement. The answer is no. Under Illinois law, "[t]he insured's coverage and right to a

defense depend not on the legal theories stated by the claimant in the underlying dispute, but on

the factual allegations." *Amerisure*, 622 F.3d at 815. "[T]he suggestion … that the [underlying]

complaint must explicitly identify the *claim* that is within the [policy] coverage represents an

unduly narrow reading of Illinois law, and the court should not simply look to the particular legal

theory pursued by the claimant, but must focus on the allegedly tortious *conduct* on which the

lawsuit is based." *Id*. at 815-16 (second set of brackets added, internal quotation marks and

citations omitted). Accordingly, UncommonGoods' decision to bring certain of its

counterclaims under non-trademark (or non-copyright, non-patent, or non-trade secret) legal

theories does not determine whether the IP exclusion applies. Application of the exclusion depends, rather, on the factual allegations underpinning those counterclaims. *See Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 696 n.9 (7th Cir. 2009) ("While an insurer certainly has a duty to defend its insured against any complaint that leaves open the possibility of coverage, that duty is premised on the facts the parties to the underlying complaint actually alleged in their complaint."). Indeed, there is no other way to faithfully interpret the actual text of the exclusion, which refers not to copyright, patent, trademark, and trade secret *claims*, but rather to claims "*[a]rising out of* the infringement of copyright, patent, trademark, trade secret or other intellectual property rights" (emphasis added).

This leads to the second question, which is how to distinguish unfair competition, deceptive trade practices, tortious interference, and unjust enrichment claims that are covered by the IP exclusion from those that are not. The answer is that a claim brought under a non-trademark legal theory is covered by the exclusion if the claim "would not have arisen but for the [trademark] claim (or necessarily arises out of the [trademark] claim)." *Santa's Best Craft*, 611 F.3d at 348; *see also Nautilus Ins. Co. v. 1452-4 N. Milwaukee Ave., LLC*, 562 F.3d 818, 821-23 (7th Cir. 2009) (contractor-subcontractor policy exclusion, which excludes from coverage all property damage claims "arising out of operations performed for you by contractors or subcontractors you hire or your acts or omissions in connection with your general supervision of such operations," covers all "intertwined claims" that provide "an alternative theory of relief" based on the same factual allegations). That is, the IP exclusion applies if the underlying claim, regardless of the legal theory under which it is styled, could not proceed independently of an allegation of trademark infringement. *See Marvin J. Perry, Inc. v. Hartford Cas. Ins. Co.*, 412 Fed. Appx. 607, 614 (4th Cir. 2011) (Maryland law) (IP exclusion applies where "the gravamen"

of the underlying unfair competition claim "is based upon [the insured's] use of its trade name, trademark, logo, and website … in violation of [the underlying plaintiff's] registration and ownership of that name and mark"); *Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215, 223 (4th Cir. 2003) (Virginia law) (IP exclusion applies where "[a]ll of the claims made in the [underlying] complaints," including those for unfair competition and violation of import statutes, "are varieties of trademark claims protected by the Lanham Act and State analogues."); *Parameter Driven Software, Inc. v. Mass. Bay Ins. Co.*, 25 F.3d 332, 337 (6th Cir. 1994) (Michigan law) (IP exclusion applies where "[a]ll four counts of [the] complaint," including those for false designation of origin and unfair competition, "were based upon [the insured's] use of the trademark"); *Indus. Indem. Co. v. Citizens Computers, Inc.*, 79 Cal. App. 4th 817, 832-33 (1999) (IP exclusion applies to breach of contract claim "because all the facts indicated that any such claims arose solely from conduct by [the insured] amounting to trademark infringement").

This, in turn, leads to the third question, which is whether UncommonGoods' unfair competition, deceptive trade practices, tortious interference, and unjust enrichment counterclaims would not have arisen but for UncommonGoods' allegation that Uncommon infringed its trademarks. The answer is yes, as each counterclaim necessarily arose from the trademark infringement allegations. The Lanham Act and common law unfair competition counterclaims turned on "[Uncommon's] use of [UncommonGoods'] registered trademarks." Doc. 24-3 at ¶¶ 44, 47–48. The deceptive trade practices counterclaim depended on the allegation that "[Uncommon's] use of [UncommonGoods'] trademarks … constitutes a passing off by [Uncommon] of their goods and/or services as those of [UncommonGoods]." *Id*. ¶ 51. The tortious interference counterclaim (Count VI) turned on the allegations that Uncommon

interfered with UncommonGoods' "reasonable expectation of exclusive use of its UNCOMMON

trademarks for branding, promotion, marketing, and advertising," that such trademarks "were

critical or significant in its present and future business relationships," and that Uncommon

"purposefully interfered with" UncommonGoods' expectations regarding the marks.  *Id*.

¶¶ 55–58.  And the unjust enrichment counterclaim (Count VIII) depended on the allegation that

Uncommon was unjustly enriched and retained benefits of the use of UncommonGoods'

"trademarks and services."  *Id*. ¶ 73.  Each counterclaim was predicated on, and none could have

stood independently of, allegations that Uncommon infringed UncommonGoods' trademarks.

Consequently, Citizens has met its burden of demonstrating that UncommonGoods'

counterclaims, including those styled under non-trademark legal theories, "[arose] out of the

infringement of … trademark" within the meaning of the IP exclusion.

Uncommon contends that even if this is so, the policy's express exception to the IP

exclusion applies, rendering the exclusion inapplicable.  The exception provides, in pertinent

part, that the IP exclusion "does not apply to infringement, in your 'advertisement', of …

slogan."  Doc. 24-8 at 19.  Unlike some insurance policies, *see Santa's Best Craft*, 611 F.3d at

346, the Citizens policy does not define the term "slogan."  Left without explicit guidance in the

policy, Uncommon cites *Hugo Boss Fashions, Inc. v. Federal Insurance Co.*, 252 F.3d 608 (2d

Cir. 2001), for the proposition that a "slogan" is a "catch word or catch phrase."  Doc. 35 at 11-

12.  From this premise, Uncommon argues that the term "uncommon" is a slogan, and that

because UncommonGoods' counterclaims focused on Uncommon's use of that term, the

counterclaims alleged infringement of a "slogan" within the meaning of the IP exclusion.

Uncommon is right that an accepted meaning of "slogan" is "catch word or phrase."  *See*

*Cincinnati Ins. Co. v. Zen Design Grp., Ltd.*, 329 F.3d 546, 556 (6th Cir. 2003) ("Slogan is

defined in the dictionary as a 'distinctive cry, phrase, or motto of any party, group, manufacturer,

or person; catchword or catch phrase.'") (quoting *Random House Unabridged Dictionary* 1800

(2d ed.1993)).  But Uncommon is wrong to conclude that the term "uncommon" is a slogan, at

least in the context of this case, where the term is the central component of UncommonGoods'

company name and brand.  As the Second Circuit squarely held in *Hugo Boss*, "the trademarked

*name* of a brand, product, or company" is not itself a "slogan":

> Thus, the Seventh Circuit, in *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781
> F.2d 604 (7th Cir.1986), implicitly, though unambiguously, acknowledged
> the distinction between trademarked house or product names, on the one
> hand, and slogans or other kinds of trademarks, on the other.  That court
> described a trademarked "slogan," together with a trademarked
> "combination of words and symbols[,] ornamental feature, [or] a distinctive
> shape," as "something ... intended to remind the consumer of the brand."
> *Id*. at 609; *accord Advanced Res. Int'l, Inc. v. Tri–Star Petroleum Co.*, 4
> F.3d 327, 334 (4th Cir.1993) (same).  It would be odd indeed to say that the
> trademarked *name* of a brand, product, or company constitutes a
> "trademarked slogan" merely because it "remind[s] the consumer of the
> brand."  For under this definition, all house, product, or brand names would
> qualify as slogans.  Thus, it seems clear that a "slogan" must be something,
> *other than the house mark or product mark itself,* that provides such a
> reminder.

252 F.3d at 619.  Applying this principle, the court held that a lawsuit brought by Boss

Manufacturing Group for infringement of the "BOSS" trademark did not allege "slogan"

infringement within the meaning of an insurance policy materially identical to the Citizens

policy here.  *Id*. at 619-20.  Likewise, because UncommonGoods' counterclaims all turned on

Uncommon's alleged infringement of trademarks that do nothing more than reflect

UncommonGoods' company and brand, the counterclaims did not allege infringement of a

"slogan."  *See Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 773 F. Supp. 2d 799, 816 (W.D.

Mo. 2011) (underlying suit alleging that insured "infringed on the product mark 'Nature's Own'

cannot be read as alleging infringement of a slogan").

Uncommon maintains in one of its briefs that the Citizens policy's failure to expressly define "slogan" renders ambiguous the IP exclusion, requiring that it be strictly construed against Citizens. Doc. 40 at 8. The contention is difficult to reconcile with Uncommon's submission, set forth in a different brief and addressed above, that "slogan" means a "catch word or catch phrase." Doc. 35 at 11. The contention is meritless in any event. Under Illinois law, "a policy term may be considered unambiguous where it has acquired an established legal meaning." *Ace Am. Ins. Co. v. RC2 Corp., Inc.*, 600 F.3d 763, 766 (7th Cir. 2010). As the Second Circuit exhaustively demonstrated in *Hugo Boss*, the term "slogan" has acquired a settled legal meaning that excludes the trademarked name of a company, brand, or product. 252 F.3d at 618-20. The Sixth Circuit agreed with this assessment in *Zen Design Group*, holding that "because slogan is easily defined by resort to common tools, such as dictionaries, it will be considered unambiguous." 329 F.3d at 556. If the term "slogan" had acquired an unambiguous meaning as early as 2001, when the Second Circuit decided *Hugo Boss*, and 2003, when the Sixth Circuit decided *Zen Design Group*, it certainly was unambiguous in 2009, when Uncommon purchased the policy from Citizens. Doc. 24 at ¶ 14. Uncommon offers no authority for the proposition that the term "slogan" in an insurance contract can encompass the trademarked name of a company, brand, or product.

Finally, Uncommon contends that Citizens, as the plaintiff in this case, cannot seek judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Uncommon's contention cannot be reconciled with the text of Rule 12(c), which clearly provides that any party, and not just the defendant, may obtain judgment on the pleadings. *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—*a party* may move for judgment on the pleadings.") (emphasis added). Precedent confirms that a plaintiff may

obtain judgment under Rule 12(c).  *See Housing Auth. Risk Retention Grp., Inc. v. Chicago Housing Auth.*, 378 F.3d 596, 600 (7th Cir. 2004).  Because the pleadings and their attachments—in particular, the insurance policy and the UncommonGoods' counterclaims in the underlying lawsuit—show that Citizens is entitled to judgment, judgment on the pleadings in Citizens' favor is the appropriate disposition.

### Conclusion

For the foregoing reasons, Citizens had no duty to defend Uncommon against UncommonGoods' counterclaims in the underlying lawsuit.  And because Citizens had no duty to defend, it also has no duty to indemnify.  *See Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010) ("If an insurer has no duty to defend, it has no duty to indemnify.").  Accordingly, Citizens' motion for judgment on the pleadings is granted, and Uncommon's motion for summary judgment is denied.  In light of this disposition, Citizens' motion to strike two paragraphs from Uncommon's Rule 56.1 statement is denied as moot.

August 31, 2011

_____
United States District Judge